**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONALD T. OLMO,

    *Plaintiff*,

v.

PATERSON POLICE DEPARTMENT, CHIEF
OF PATERSON POLICE DEPARTMENT,
OFFICER RAFAEL CAMPOS, K-9 UNIT
TRAINING DEPARTMENT, and K-9
OFFICER,

    *Defendants*.

Civil Action No. 16-9414 (JMV)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Plaintiff Donald Olmo ("Plaintiff") seeks to bring this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. D.E. 8. Plaintiff filed his initial Complaint on December 21, 2016. D.E. 1. After review pursuant to 28 U.S.C. § 1915(e)(2), this Court dismissed the Complaint without prejudice for failure to state a claim upon which relief may be granted because Plaintiff had not brought his claims under any specific law or statute. *Id.* The Complaint also lacked plausible factual allegations in certain areas. *Id.* Plaintiff was granted the opportunity to cure the deficiencies in an amended complaint. *Id.* at 3.

    Plaintiff then filed his First Amended Complaint ("FAC") on August 23, 2017. D.E. 14. Because Plaintiff is still proceeding *in forma pauperis*, the Court will screen Plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons expressed in the Court's original screening opinion, D.E. 5, the Court **GRANTS** Plaintiff's application to proceed *in forma pauperis*. While

Plaintiff has not broken his allegations into formal counts in this FAC, he has sufficiently alleged facts consistent with Section 1983 claims for excessive force against the "K-9 Officer on Duty 5-16-2016" and the "Female Officer," and claims for failure to intervene against Officer Rafael Campos, "Female Officer," and "Other Officers" under the Fourth Amendment.[1] All other claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim upon which relief can be granted.

## I. FACTUAL BACKGROUND[2]

Plaintiff's that Paterson Police Department officers used excessive force when arresting him on May 16, 2016. Plaintiff's specific allegations are as follows. Several days before the arrest, Plaintiff interacted with Patterson Police officers concerning an argument between Plaintiff and his wife. FAC at 7. One of these officers was the "Female Officer" named in this action. *Id.* The police told Plaintiff to "get in [his] vehicle and leave before [Plaintiff] went to jail." *Id.* at 8. Plaintiff alleges that over the "next few days [Plaintiff] was being harassed by some of the same officers stating they would f--k [him] up and lock [him] up if they [caught] [him] doing the wrong thing." *Id.* These interactions included one instance where police officers allegedly shined their spotlights in Plaintiff's face and threatened him. *Id.* These events led Plaintiff to find some old license plates and place them on his vehicle in order to avoid being recognized by the police. *Id.* Plaintiff also states that he purchased two gold chains around this time, totaling $2,000 in value. *Id.*

---

[1] The Court's role at this stage is to perform an initial screening function pursuant to Section 1915(e)(2)(B). The Court's ruling does not prejudice Defendants from litigating this matter as they see fit, including the decision whether to file a motion to dismiss pursuant to Rule 12(b)(6).

[2] For the purposes of screening the FAC, the Court takes all facts alleged by Plaintiff as true and construes the pleadings liberally due to Plaintiff's *pro se* status. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

On May 16, 2016, while driving to his sister's house, Plaintiff was followed by police for some time until they signaled for him to pull over by switching on their overhead lights. *Id.* at 8. Plaintiff states that he panicked and "took off," leading police on a chase that ended when the Plaintiff crashed his vehicle taking a corner too fast. *Id.* After crashing, and fearing that his car was on fire, Plaintiff stepped out of the car and was immediately surrounded by officers with guns drawn. *Id.* The officers ordered Plaintiff to the ground. *Id.* at 9. Plaintiff states that "I was trying but told [the officers] it was very hard for me because of my disability, polio on right leg which is a lot shorter and thinner than the other." *Id.* Before he was able to comply, Plaintiff claims that a "female officer" kicked him in the chest, knocking him onto his back and causing him to bang his head against the ground. *Id.* Officers then ordered Plaintiff to roll onto his stomach and spread his hands out, and Plaintiff complied. *Id.*

When one of the officers went to put Plaintiff in handcuffs, Plaintiff alleges that a "K-9 Police Officer" on the scene said "[l]et him go I got something for him," after which a police dog was released and commanded to attack the Plaintiff. *Id.* The dog allegedly bit the Plaintiff on his lower back. *Id.* Plaintiff states that "[o]nce the dog sunk his fangs into my lower back I screamed in such pain and agony." *Id.* Plaintiff alleges that the K-9 Police Officer then forcefully pulled on the dog's vest, causing further damage to Plaintiff's back. *Id.* Plaintiff claims that the officer repeated this on the other side of his back. *Id.* After Plaintiff rolled onto his back "begging the officers to stop," they started screaming insults and cursing at him. *Id.* The K-9 Police Officer allegedly again ordered the dog to attack Plaintiff, biting and chewing into his disabled leg. *Id.* at 10. The officer pulled on the dog's vest again, causing "the flesh to rip open over and over again exposing the bone and tendons." *Id.* at 10. The dog then allegedly began shaking Plaintiff's leg violently and Plaintiff states that "it felt like it was gonna [sic] break." *Id.* As Plaintiff grabbed

his leg, the dog bit him on both of his hands. *Id.* The bites to Plaintiff's hands ripped open his right thumb, exposing bone and leaving gashes on the other hand. *Id.* All through this Plaintiff states that the officers "laughed and cursed insults as [he] cried, begged and pleaded with them." *Id.*

An ambulance was called, and Plaintiff was handcuffed and "practically dragged to [it] because [he] couldn't walk." *Id.* Plaintiff was then brought to a hospital for treatment. *Id.* At the hospital police officers allegedly took photos of Plaintiff's wounds their cell phones. *Id.* at 10-11. Plaintiff asked why they were taking pictures and the Sergeant said that he "needed to put them in their reports." *Id.* Plaintiff was later moved to the Passaic County Jail and placed in the Medical Unit to receive more treatments for his wounds. *Id.* at 11. Plaintiff "had to sleep for almost two weeks on a mat." *Id.* Several of Plaintiff's stiches broke open from sleeping like this and the wounds on his back became infected. *Id.*

Plaintiffs injuries are the wounds that he received to his back, right leg, and both hands. *Id.* at 12. Additionally, Plaintiff has been diagnosed with P.T.S.D. and has been receiving medication for "[his] horrible nightmares and even day dreams." *Id.* Plaintiff also that his gold chains were stolen from him.

### A. Plaintiff's Claims Against Each Defendant[3]

Plaintiff sues one identified officers and other unidentified officers. Plaintiff first brings claims against Officer Rafael Campos who "is the officer [who] chased and arrested [Plaintiff]." *Id.* at 4. Plaintiff claims that Officer Campos used "brutality and excessive force by allowing [the] K-9 unit to use K-9 to maul my leg, back and hands and allow female officer to kick me in the

---

[3] While Plaintiff does not clearly delineate his claims against each defendant, the Court summarizes Plaintiff's factual allegations against each named party for clarity.

chest causing me to bang my head." Plaintiff next asserts claims against the "K-9 Officer on Duty 5-16-2016" (hereinafter the "K-9 Officer"). Plaintiff claims that after laying on the ground, the K-9 Officer repeatedly had the dog attack Plaintiff and then pulled the dog off Plaintiff in a manner to worsen the injuries. *Id.* Plaintiff also contends that the K-9 Officer lied on his police report, claiming that Plaintiff was punching and kicking the police dog. *Id.* at 6. Plaintiff further sues the unnamed "Female Officer" and "[a]ll Officers at [the] scene of my arrest." *Id.* Plaintiff alleges that the Female Officer kicked him on the chest causing him to hit his head on the ground. *Id.* Plaintiff claims that the other unknown officers were cursing and "mentally abusing me" and "lying on police reports." *Id.*

Plaintiff also sues the "K-9 Training Department or Supervisor." Plaintiff alleges that the Training Department or Supervisor failed to train "K-9 Officers properly or purposely trained officers to use K-9 to attack suspects once in a submissive position." *Id.* at 5. In addition, Plaintiff asserts claims against the Paterson Police Department and the Chief of Police. Plaintiff contends that the Chief failed to supervise the "Patterson Police Officers, allowing excessive force and police brutality to [Plaintiff] and many others abused before me." *Id.* Plaintiff also claims that inadequate training which resulted in the excessive force against him. *Id.*

Plaintiff seeks $5,000,000 in damages for "police brutality and using excessive force causing me PTSD and an even further limited ability" to use Plaintiff's right leg. *Id.* at 12. Plaintiff asks that all officers involved be removed from the police department, that the officers receive better training and supervision, and that cameras be installed in all police vehicles and on all officers. *Id* at 13.

## II.　STANDARD OF REVIEW

Pursuant to § 1915, the Court excuses Plaintiff from prepayment of fees because he has "establish[ed] that he unable to pay the costs of his suit." *Walker v. People Exp. Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). However, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the complaint and dismiss the action if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2). When considering dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief can be granted, the Court must apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In addition, because the Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's bald assertions or legal conclusions." *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 14, 2010) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)) (internal quotation marks omitted).

## III. ANALYSIS

### A. Section 1983

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

### B. Qualified Immunity

When a state official's actions give rise to a Section 1983 claim, qualified immunity may shield the officer from liability. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). The Supreme Court and the Third Circuit have stressed that questions of immunity should be resolved at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008). However, because "[t]he defendant has the burden of establishing qualified immunity," and this Court is simply performing a screening function, the Court is unable to determine qualified immunity at this juncture. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (stating that officer defendants must show that it was not clear whether alleged conduct would be unlawful to be entitled to qualified immunity).

### C. Consideration of Unnamed Defendants

As a threshold matter the Court must determine whether to allow claims to be brought against the unnamed Defendants in Plaintiff's FAC. Rule 10(a) of the Federal Rules of Civil Procedure requires that a pleading set forth, among other things, the names of all the parties. While the "K-9 Police Officer," the "Female Officer," and the "Other Officers" mentioned in the complaint are unnamed, this does not foreclose claims against the officers at this stage. Fictitious parties, or "John/Jane Doe" defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed. *See, e.g., Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 31-32 (3d Cir. 1985); *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977). Fictitious parties must eventually be dismissed if discovery yields no identities. *See Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 249 (3d Cir. 2009) (stating that the "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified").

Here, allowing Plaintiff's claims to proceed into pretrial discovery would not prejudice the "Doe" defendants and dismissing his claims would be unfairly prejudicial on the Plaintiff. *See Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) (stating that due process problems may arise if judgement were to issue against Doe defendants, or if "findings of fact or law were to occur before they had a chance to participate," but that because Doe defendants must eventually be dismissed if no identities are found, these are not overriding concerns). After pretrial discovery, if the names of the K-9 Police Officer, the Female Officer, or the "Other Officers" are still unknown, the claims will be dismissed. *Blakeslee*, 336 F. App'x at 249 (citing *Scheetz*, 130 F.R.D. at 37).

### D. Plaintiff's Claims

Plaintiff's Complaint is not broken up into formal counts, nor does it clearly separate the claims against individual Defendants. The Court will first address the excessive force claims against each individual Defendant and then proceed to the failure to intervene against each individual Defendant. Finally, the Court will analyze the failure to train and failure to supervise claims against the Town of Patterson.

#### a. Excessive Force Against Individual Defendants

Plaintiff brings excessive force claims against the K-9 Officer, the Female Officer, and Officer Rafael Campos. "A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates" the Fourth Amendment's protection from unreasonable search and seizure. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995). "Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Id.* at 634 (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988)). "A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *see Graham* 490 U.S. at 396. The reasonableness inquiry is objective and is measured by "careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Third Circuit has also recognized other factors such as the duration of the action, whether the action takes place in the context of an arrest, the possibly that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

Moreover, a court must consider whether a seizure was reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016) (quoting *Graham*, 490 U.S. at 396-97). As a result, a court must consider whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Norcross v. Town of Hammonton*, No. 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) (quoting *Graham*, 490 U.S. at 397). The reasonableness inquiry is objective but must also consider that the circumstances of police action are often "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396. When more than one officer is sued on a Fourth Amendment excessive force claim, the district court must evaluate each officer's liability separately. *See Kaucher v. Cty. of Bucks*, 455 F.3d 418, n.7 (3d Cir. 2006) ("In order to prevail on a [Section] 1983 claim against multiple defendants, a plaintiff must show that *each individual defendant* violated his constitutional rights" (emphasis added) (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005))).

### i. "The K-9 Officer"

Plaintiff claims "The K-9 Officer" used excessive force in violation of the Fourth Amendment while apprehending Plaintiff. FAC at 4. Specifically, Plaintiff alleges that during the arrest, the K-9 Officer "[t]urned [the] K-9 on me to attac[k], [the] K-9 was yanked really hard back by [the] officer causing my flesh to be torn all over my body." *Id.*

The "use of a police dog to bite and hold a suspect is not *per se* unreasonable." *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007). In *Vangelo*, the Third Circuit considered whether an officer used excessive force when ordering his police dog to bite and hold a plaintiff, who, at the time, was attempting to break up a violent fight. *Id.* at 169. Upon arriving on the scene, the

officer attempted, unsuccessfully, to verbally warn the combatants to stop fighting. *Id.* The officer instructed the police dog to bite and hold the plaintiff. *Id.* The dog held its bite until he was ordered off by the officer who then arrested the plaintiff. *Id.* Subsequently, the plaintiff sued the officer pursuant to Section 1983, asserting that the officer violated his Fourth Amendment right to be free from excessive force. *Id.* Analyzing the case under the *Graham* reasonableness factors, the district court, followed by the Third Circuit, found that the officer was entitled to qualified immunity because the use of a police dog was a reasonable use of force in response to a violent fight where combatants did not respond to verbal orders and the officer was outnumbered. *See Moore v. Vangelo*, No. 03-4718, 2005 WL 217885 at *7 (E.D. Pa. Sept. 6, 2005), *aff'd*, 222 F. App'x 167 (3d Cir. 2007).

Here, Plaintiff alleges that after he was on the ground, an officer put his knee on Plaintiff's back and began to handcuff him. FAC at 9. Plaintiff contends that the K-9 Officer told the officer subduing Plaintiff to "let him go I got something for him." *Id.* at 9. The Officer then commanded the dog to attack. *Id.* Plaintiff further claims that once the dog had a hold on him, the Officer grabbed the vest of the dog and pulled back quickly – causing extreme pain and tearing Plaintiff's flesh. *Id.* at 9. This was repeated on other parts of Plaintiff's body. *Id.* at 9-10.

Taking Plaintiff's factual allegations as true, the actions of the K-9 Officer could constitute excessive force in violation of the Fourth Amendment. Here, the severity of the crime is uncertain. While Plaintiff admits to running from the police and placing fake license plates on his vehicle, he also alleges that he had no warrant out for his arrest, that the vehicle was not stolen, and that he did not have any contraband on his person or in the vehicle. FAC at 11. In addition, according to the FAC, Plaintiff was already apprehended, and no longer posed a threat to the arresting officers, when the K-9 Officer gave the command to attack. *Id.* at 9. Further, Plaintiff was unarmed and

outnumbered by the officers. *Id.* Analyzing these facts under *Graham*, the use of the police dog to repeatedly injure and maim Plaintiff when he was no longer a threat plausibly pleads that the K-9 Officer acted unreasonably. Accordingly, Plaintiff's excessive force claim against the K-9 Officer remains.

### ii. "Female Officer"

Plaintiff also brings an excessive force claim against the Female Officer. Specifically, Plaintiff claims that while he was attempting to get on the ground, the Female Officer kicked him in the chest, causing him to fall backwards and bang his head on the pavement. FAC at 9. Plaintiff had allegedly been explaining to the police that his polio injury made it difficult for him to get down on his stomach. *Id.*

By the time the alleged excessive force took place, Plaintiff had already exited his vehicle and been surrounded by officers with guns drawn and trained on him. *Id.* Plaintiff claims that he was attempting to comply with the officers' instructions. At this point, the Court cannot determine that the Female Officer's conduct was reasonable. *See Wade v. Colaner*, No. 06-3715, 2010 WL 1490590 at *8-9 (D.N.J. Apr. 13, 2010) (holding that a jury could find officer's use of force unreasonable when the suspect had been half hand-cuffed and was complying with officer's orders). Accordingly, Plaintiff's excessive force claim against the Female Officer remains.

### iii. Officer Rafael Campos

Plaintiff also brings an excessive force claim against Officer Rafael Campos ("Officer Campos") of the Paterson Police Department. Plaintiff alleges that Officer Campos was the "officer [who] chased and arrested me…" FAC at 4. Plaintiff includes few facts and does not allege any facts showing that Officer Campos using any force, beyond the use of handcuffs, against

Plaintiff. Therefore, the Court finds that Plaintiff has failed to make plausible allegations to establish his excessive force claim against Officer Campos and this claim is dismissed.

### b. Failure to Intervene

Next, Plaintiff brings claims for failure to intervene against the Female Officer, the "Other Officers," and Officer Rafael Campos. "It is not necessary that a police officer actually participate in the use of excessive force to be held liable under section 1983." *Garbacik v. Janson*, 111 F. App'x 91, 94 (3d Cir. 2004) (quoting *Webb v. Hiykel*, 713 F.2d 405 (8th Cir. 1983)). Rather, if an officer is present at the scene of the incident and fails to take reasonable steps to protect the victim of another officer's use of excessive force, the non-intervening officer can be held liable. *Id.* The officer, however, must have a "realistic and reasonable opportunity to intervene" in order to be held liable. *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) (internal quotation omitted); *see Bryant v. City of Philadelphia*, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012), *aff'd* (Mar. 15, 2013) (finding that "if a police officer is present when another officer violates a citizen's constitutional rights, the first officer is liable under § 1983 if that officer had reason to know that a constitutional violation, such as excessive force, was being used, and that officer had a reasonable and realistic opportunity to intervene") (internal quotation omitted).

In this case, based on Plaintiff's allegations, the Female Officer, the "Other Officers" at the scene, and Officer Campos did not take reasonable steps to protect Plaintiff from the alleged excessive force used by the K-9 Police Officer. *See Smith*, 293 F.3d at 652 (stating "if [he] can show at trial that an officer attacked him while [another officer] ignored a realistic opportunity to intervene, he can recover" (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (internal quotation marks omitted))). Plaintiff recounts that all officers involved were "screaming out insults and cursing at [Plaintiff]" while the K-9 Officer allowed the dog to bite Plaintiff and then

pulled the dog back in order to cause damage. FAC at 9. Plaintiff alleges that this went on for "a while," giving the other officers present the time and ability to try to stop the behavior of the K-9 Officer. *Id.* If true, then the Female Officer, the Other Officers, and Officer Campos would have a duty to take reasonable steps to protect the Plaintiff from the K-9 Officer's use of excessive force. Thus, Plaintiff's failure to intervene claim remains.

### c. Failure to Train and Failure to Supervise Against the Town of Patterson, the K-9 Training Department, and the Chief of Police[4]

The Court will treat Plaintiff's claims against the "K-9 Training Department," the Patterson Police Department,[5] and the Chief of Patterson Police in his official capacity as against the Town of Patterson itself. Plaintiff claims that "[t]hey lacked to train [sic] K-9 Officers properly or purposely trained officers to use K-9 to attack suspects once in a submissive position when not running or fighting." FAC at 5. Plaintiff alleges that the Chief of the Paterson Police Department failed to supervise and failed to train the Department's officers. Specifically, Plaintiff alleges that the Chief of Police was liable for "[lack of] supervision [of] Paterson police officers [and] allowing excessive force and police brutality." *Id.* Further, Plaintiff alleges that the Chief of Police "[failed

---

[4] At the outset, Plaintiff lists the Paterson Police Department, the "K-9 Training Department," and the Chief of Paterson Police as Defendants. For the purposes of this opinion, the Court assumes that the "K-9 Training Department" is an entity within the Town of Paterson and therefore the claims are against the Town of Paterson itself. Under Section 1983, the Third Circuit has treated a municipality and its police department as a single entity. *Bonenberger v. Pymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *see also Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (noting that police departments are not separate judicial entities but simply "an administrative arm of the local municipality"). The claims against the Police Chief in his official capacity are also claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that "[o]fficial-capacity suits [ ] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Therefore, the Court analyzes these claims together.

[5] While Plaintiff lists the Patterson Police Department as a Defendant, he does not state any specific claims against it.

to train] properly and [and is liable for] not having video cameras in Paterson NJ police vehicles, [which was done] mainly to hide the excessive force and police brutality." *Id.*

While a municipality may be liable under Section 1983, it cannot be held liable under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. "A municipality may only be held liable under § 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal citation omitted). "A plaintiff may show the existence of a *policy* when a decision-maker with final authority issues an official proclamation, policy, or edict. . . . *[A c]ustom* may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (emphases added) (internal quotations and citations omitted).

Concerning appropriate training, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983."). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . *Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary* to demonstrate

deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (emphasis added) (internal quotations, citations, and brackets omitted).[6]

Additionally, a plaintiff must show that the unlawful policy or custom was the proximate cause of the plaintiff's injuries. The United States Supreme Court has observed the following as to proximate cause:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *see also Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

A failure to supervise claim is akin to failure to train. It is derived from a similar category of policy or practice liability. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, reversed on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Supervision entails training, establishing performance parameters, promulgating rules, monitoring adherence to performance standards, and responding to unacceptable performance. *Sample v.*

---

[6] "[I]n certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (internal quotations omitted) (citing *Canton*, 489 U.S. at 390 n.10). These "single-incident" failure to train cases are, however, rare. "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas*, 749 F.3d at 223–24 (internal quotation, citation, and bracket omitted).

*Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). In *Sample*, the Third Circuit developed a four-part test for determining whether an official may be held liable on a claim for failure to supervise. *Id.* at 1118. The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant/supervisor was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Id.*

Plaintiff alleges that the K-9 Training Department "purposely trained officers to use K-9 to attack suspects once in a submissive position when not running or fighting." FAC at 5. However, Plaintiff makes no plausible factual allegations to support this conclusory allegation. Plaintiff has not alleged any facts that point towards a "pattern" or "practice" of training the K-9 handlers to inflict gratuitous punishment or unreasonable pain. To survive review under the Rule 12(b)(6) pleading standard, Plaintiff must plead facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). Regarding this claim, Plaintiff has essentially only offered a conclusion that the K-9 Training Department failed to adequately train its officers. As a result, these claims are dismissed.

The Chief cannot be held liable under a *respondeat superior* theory pursuant to Section 1983, nor has Plaintiff alleged plausible facts that would establish a "pattern" or "practice" of training police officers in a way that evinces a "deliberate indifference" to the constitutional rights of the people with whom they interact. Plaintiff also does not identify any supervisory policy or practice in place at the time of the alleged injury, or any indifference to the risk of constitutional

violations by those he supervises. Plaintiff only provides conclusory statements about "excessive force" and "police brutality" along with a "lack of training." This is not sufficient to plausibly allege a claim that the Chief is liable for either a failure to train or a failure to supervise.

Therefore, Plaintiff's failure to train claim against the K-9 Training Department, and his claims for failure to train and failure to supervise against the Chief of Police, are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's application to proceed *in forma pauperis*. Plaintiff's claims for (1) excessive force against the K-9 Officer, and the Female Officer, and claims for (2) failure to intervene against Female Officer, Officer Rafael Campos, and the Other Officers remain. All other claims are dismissed without prejudice.

When dismissing claims brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, the latter allowing a plaintiff to correct any deficiencies in their complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-111 (3d Cir. 2002). Typically, district courts will deny leave to amend only if: (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). At this point, the Court cannot conclude that Plaintiff's dismissed claims are futile. Therefore, the Court shall provide Plaintiff thirty (30) days to file a second amended complaint that cures the deficiencies set forth herein. If Plaintiff does not submit a second amended complaint curing these deficiencies within thirty days, the dismissal of these claims will be with prejudice. A dismissal with prejudice means that Plaintiff will not be able to file any future suit against the Defendants concerning the allegations in the FAC. An appropriate form of Order accompanies this Opinion.

Dated: April 16, 2018

John Michael Vazquez, U.S.D.J.